323 So.2d 765 (1975)
STATE of Louisiana
v.
Lathan KNIGHT.
No. 56756.
Supreme Court of Louisiana.
December 8, 1975.
*766 Louis A. Heyd, Jr., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Lathan Knight was charged by bill of information with the armed robbery of Harvey Luker in violation of La.R.S. 14:64. After trial by jury, he was found guilty as charged and subsequently sentenced to serve twelve years at hard labor. On appeal, he relies upon eight assignments of error for reversal of his conviction and sentence.

FACTS
At about 9:45 on the evening of July 25, 1974, two men drove their yellow Pinto into the Hudson Oil Station on the Chef Menteur Highway in New Orleans. They approached the manager and sole attendant, Harvey Luker, and sought his assistance in checking the oil in their car. The two men remained at the station until it was cleared of customers and then one of the men pulled a gun on Luker and told him to get inside. This man took the money in Luker's pockets and his money changer and then went outside and began to operate the business as an attendant. In the meanwhile, defendant, also armed with a gun, ordered Luker to the back room and told him to open the safe. Upon being advised that the safe was in the front of the station, they returned to this area where Luker was required to open the safe, remove the money and place it on the floor. Defendant then put the money into a paper bag and ordered Luker to return to the back room and lie on the floor. There, he tied his hands and feet with adhesive tape. Thereafter, defendant and the other robber left in their car. In a few minutes, Luker was able to free himself. He furnished a description of the two men to the authorities. Some months later, an officer investigating a different robbery was given the name of Lathan Knight as the robber of the Hudson Oil Station. This officer then took ten photographs which included that of defendant and other suspects to Luker, who made a positive identification of Lathan Knight. Arrest and prosecution of Knight then followed.

ASSIGNMENTS OF ERROR NOS. 1, 2, 3 AND 4
These assigned errors relate to the court's rulings that the state was not required to furnish certain particulars requested by defendant in his motion for a bill of particulars. The five requests not required to be answered by the state are:
3. State what description was given of the alleged perpetrators.
4. State what clothing the alleged perpetrators were wearing at the time the offense was allegedly committed.

*767 7. State what procedures were used in preparation of the lineup.
9. State the exact place and location that the prosecuting witness was located at the time the lineup was being prepared.
11. State whether or not any other witnesses were allegedly at the scene at the time that the alleged crime was to have been committed other than Harvey Luker.
It is argued that, since the only evidence of guilt depended upon the identification of defendant by Luker, it was essential that the defense be given the description of the perpetrators and their clothing as related by Luker, as well as the circumstances surrounding the lineup procedure, in order to test the credibility and memory of the victim. Also claimed necessary in preparation for trial was information as to whether there were witnesses to the crime other than the victim.
According to the record, immediately after the hearing on the sufficiency of the responses of the state to defendant's application for a bill of particulars, a hearing on the motion to suppress the identification was conducted. At this hearing, the victim responded to questions concerning the description and clothing of defendant given by him to the police at the time of the robbery. Luker also answered questions regarding the circumstances surrounding the lineup and his location at the time. Likewise, the officer who conducted the lineup testified as to the manner in which it was held. Hence, most if not all, of the information sought and denied by the trial judge's rulings, except as to the eyewitnesses other than the victim, was obtained at this hearing conducted nearly a month before trial.
The purpose of a bill of particulars is to inform the defendant more specifically of the nature and cause of the charge against him. However, the defendant is not entitled to the details of the evidence with which the state expects to prove its case. State v. Womack, 283 So.2d 708 (La. 1973). Specifically, the state need not supply the names and addresses of witnesses to the crime. State v. Kado, 300 So.2d 461 (La.1974). Likewise, the state is not obliged to furnish information regarding the circumstances surrounding the identification of the defendant. State v. Breston, 304 So.2d 313 (La.1974). Hence, the rulings of the trial judge were correct. These assigned errors are without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends that the trial judge erred in denying his motion to suppress the identification of defendant. Defendant's objection is that the lineup identification and subsequent in-court identification were tainted by an earlier photographic identification.
The armed robbery of Harvey Luker for which defendant was charged occurred at the Hudson Oil Station on July 25, 1974. About three months later (October 31, 1974) two police officers visited Luker at the station and exhibited to him a series of ten photographs. At this time, one of the police officers stated: "I advised Mr. Luker I had suspects." Defendant argues that this "suggestive reference" by the police officer rendered the photographic identification impermissibly suggestive. The lineup was conducted on November 12, 1974, and the trial was held on April 8-9, 1975.
In determining whether an identification procedure is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification, reference must be made to all the surrounding circumstances. State v. Rhodes, 308 So.2d 770 (La. 1975).
In the instant case, the officer who displayed the photographs to Luker testified that in the course of an investigation *768 of another armed robbery he received information that defendant was involved in an armed robbery of the Hudson Oil Station. He also obtained names of other armed robbery suspects in the area. He then secured defendant's photograph along with those of other suspects and brought them to the station and displayed them to Luker. It was at this time that the officer stated he had "suspects." No other comment or reference to the possible suspect was made. The context of the officer's entire testimony is that the officer's remark did nothing more than explain the nature of his visit. Whenever a victim is shown a group of pictures or is summoned to a lineup, it is generally assumed that a "suspect" is there present. Thus, in this context, the officer's reference to "suspects" does not justify a conclusion that the procedure here used was impermissibly suggestive.
Moreover, the courtroom identification had an independent basis. The robbery, which lasted five to seven minutes, occurred in a well-lighted area. Mr. Luker testified that he was in close proximity to defendant during the entire time. Likewise, Luker recognized defendant as having visited his place of business prior to the robbery. At trial, Luker definitely identified defendant as one of the robbers. In sum, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
During cross-examination of Morris Joseph, a character witness for the defense, the state asked: "Did you know that Lathan Knight on June, 1965 was arrested for simple burglary?" At that time, defendant was a juvenile. Defendant moved for a mistrial, which was denied. Defendant argues that the reference to his prior juvenile arrest constitutes reversible error.
Evidence of a prior arrest is not admissible for the purpose of impeaching the credibility of a witness. La.R.S. 15:495. However, in State v. Banks, 307 So.2d 594 (La.1974), we stated:
Nevertheless, in spite of the prohibition in R.S. 15:495, when the question has arisen in this court, we have held that it is not reversible error for the prosecution to ask a character witness for the defendant about his knowledge of prior arrests. State v. Daniels, 262 La. 475, 263 So.2d 859 (1972); State v. Simpson, 247 La. 883, 175 So.2d 255 (1965).
In Banks on cross-examination of a character witness called by defendant, the prosecutor asked: "Did you know ... he was arrested for simple burglary?" This question is identical to the question asked here. However, defendant argues that, since the question here makes reference to a juvenile arrest, this case is distinguishable from Banks. We do not agree. In our view, it is a distinction without a difference. Banks is dispositive of the issue here. Cf. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Moreover, Mrs. Mildred Knight, mother of defendant, had previously testified that: "I never had any problem with Lathan, not even as a juvenile ...." This represents a further injuction by defendant of the issue of his juvenile record into the case. The motion for mistrial was correctly denied.

ASSIGNMENT OF ERROR NO. 7
After the state had asked the question of Morris Joseph, a character witness called by defendant, which was the subject of the last assigned error, the court ruled that it would not permit further questions regarding defendant's prior arrests. The next character witness, Mrs. Ida Butler, was called by the defense. During the cross-examination of this witness and after an objection to a question asked by the state was sustained, the prosecutor stated: "Well, Your Honor, I want to object to the whole witness' testimony because you *769 have effectively deprived me of any cross-examination by this ruling and I would move to strike her whole testimony." Defendant argues that this remark was irrelevant, immaterial and also of such a nature as to create prejudice against defendant in the minds of the jury and that under article 771 of the Code of Criminal Procedure, the judge should have admonished the jury to disregard the remark. We do not consider that the remark was of such a prejudicial nature as to require an admonishment. In any event, the record reveals that defendant did not request such an admonishment. Article 771 requires that such a request be made.[1] Hence, failure to object to an irregularity at the time of its occurrence cannot be availed of after verdict. La.Code Crim.P. art. 841, as amended, La.Acts 1974, No. 297, § 1. Assignment of Error No. 7 is without merit.

ASSIGNMENT OF ERROR NO. 8
This assignment of error is leveled at the trial judge's denial of a motion for a new trial. Defendant asserts that the verdict is contrary to the law and evidence in that the state presented insufficient evidence to sustain a verdict of guilty. Secondly, he reurges several of the same errors which were the subject of previous assignments of error. He also asserts that the jury, after being deadlocked, was further charged by the judge and asked to continue its deliberations, which resulted in a verdict of "convenience" rather than one based upon the law and evidence, citing as authority State v. Nicholson, 315 So.2d 639 (La. 1975). Finally, defendant claims that the ends of justice would be served by the granting of a new trial.
The allegation that the verdict is contrary to the law and evidence in that the evidence is insufficient to sustain the verdict of guilty presents nothing for our appellate review. We review only claims of no evidence of the crime charged or an essential element thereof. Furthermore, we reject the reurged errors for the same reasons set forth in the previous assignments of error. The complaint in connection with the judge's further charges to the jury after it had retired to deliberate upon the verdict is likewise without merit. The record does not contain the charge complained of nor does it reflect that any objection or motion for mistrial was made at the time of occurrence. Hence, failure to object to an irregularity, if any, at the time of its occurrence cannot be availed of after verdict. La.Code Crim.P. art. 841, as amended, La.Acts 1974, No. 297, § 1. Finally, no showing has been made that an injustice has been suffered by defendant warranting the granting of a new trial. In sum, the trial judge correctly denied the motion for a new trial.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] La.Code Crim.P. art. 771 provides:

In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. (Emphasis added.)